IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:*<br><br>COMBUSTION ENGINEERING, INC.,<br><br>Debtor. | Chapter 11<br><br>Bankr. Case No. 03-10495 (JKF)<br><br>Adv. Proc. Case No. 03-53076 (JKF) |
| TIG INSURANCE COMPANY (solely as successor by merger to International Insurance Company), and THE NORTH RIVER INSURANCE COMPANY,<br><br>Plaintiffs,<br>v.<br><br>COMBUSTION ENGINEERING, INC. and BASIC, INC.,<br><br>Defendants. | Civil Action No. 04-1550 (JEI) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF APRIL 21, 2005 OPINION AND ORDER

In the summary judgment proceedings in the Bankruptcy Court that gave rise to this appeal, the parties argued – and the Bankruptcy Court agreed – that the 1991 Settlement Agreement ("Agreement") was unambiguous. (*See, e.g.*, July 6, 2004 Bankr. Hrg. Tr. at 17, Exhibit 16 in the Joint Designation of Record ("Record") filed in this Court on February 4, 2005.)  On appeal in this Court, the parties maintained their position that the Agreement was unambiguous, and asserted that the Court need not resort to extrinsic evidence to determine the parties' intent. (*See, e.g.*, February 24, 2005 Hearing Transcript at 61, 70, 74.)  Neither party

- 1 -

argued that, if the contract is ambiguous, summary judgment was nonetheless appropriate. Indeed, given the space constraints, neither party attempted any kind of comprehensive review of the extrinsic evidence. At the hearing on February 24, 2005, the Court likewise did not focus on the extrinsic evidence, other than noting that the Bankruptcy Court had not weighed the extrinsic evidence or made any fact finding with respect to that evidence. (See February 24, 2005 Hearing Tr. at 71.)

In its April 21, 2005 Opinion, this Court concluded that the Agreement is ambiguous, and that the parties' intent cannot be determined from the contract language alone. (Opinion at 24 ("it is impossible to reconcile the conflicting provisions of the documents and discern the intent of the contracting parties based on the language alone.")) Instead of concluding on that basis that the issue had to be decided by a trier of fact, the Court proceeded to examine certain of the extrinsic evidence of record. Based on this review, the Court concluded as a matter of law that the parties only intended to release coverage obligations under a single policy (XS 2012) issued by United States Fire Insurance Company, rather than policies issued by Plaintiffs International and North River. (Opinion at 24-26.) Plaintiffs respectfully submit that this latter conclusion was in error, as there is more than substantial evidence in the record that would support a jury's finding that the parties intended to release the policies issued by Plaintiffs, as well as the policy issued by United States Fire Insurance Company.[1] As a result,

---

[1] As noted above, none of the parties focused on the extrinsic evidence in their arguments to this Court. Because the Court did not have the benefit of the parties' guidance concerning the nature and extent of the extrinsic evidence, it appears to have overlooked certain evidence of record. Reconsideration is appropriate under these circumstances. See Karr v. Castle, 768 F. Supp. 1087, 1090 (D.Del. 1991) (reconsideration "should be granted in circumstances where the court has . . . made an error not of reasoning, but of apprehension.").

there is a genuine dispute concerning the parties' intent that cannot be resolved as a matter of law, and summary judgment is inappropriate.

### ARGUMENT

As this Court recognized, an agreement is ambiguous if it is "susceptible of more than one meaning." Sumitomo Mach. Corp. of Am., Inc. v. AlliedSignal, Inc., 81 F.3d 328, 332 (3d Cir. 1996) (quotation omitted); Mellon Bank N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980).  Under well-established Third Circuit precedent, if a court determines that a contract is ambiguous, the interpretation of that contract becomes a question of fact for the trier of fact to resolve in light of the of the extrinsic evidence offered by the parties in support of their respective interpretations.  *See* Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 163 (3d Cir. 2001) ("It is hornbook law that if the relevant terms in a contract are ambiguous, the issue must go to a jury."); *see also* Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421 (3d Cir. 1999) (same); Craine v. Trinity College, 791 A.2d 518, 541 (Conn. 2002) (interpretation of contract terms was properly a question for jury); Great Atlantic & Pacific Tea Company, Inc. v. Checchio, 762 A.2d 1057, 1061-62 (N.J.Super, App. Div. 2000) (summary judgment improper for either party where ambiguity as to lease agreement required factual determination by trier of fact).

Summary judgment is warranted only where the overwhelming, uncontradicted extrinsic evidence concerning the parties' mutual intent demonstrates that one party's interpretation is the only reasonable interpretation.  In other words, to prevail on their motion for summary judgment, Defendants were obligated to establish that there was no genuine issue

as to any material fact requiring trial. Fed. R. Civ. P. 56(c).[2] Facts that could alter the outcome are "material," see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and disputes are "genuine" if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir. 1995).

At the summary judgment stage, the task of the Court is to determine if factual disputes exist, not to resolve those disputes if they are found; factual disputes must be resolved by the fact-finder after an evidentiary hearing. See Liberty Lobby, 477 U.S. at 247-50 (1986); Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (when an ambiguity exists, a court cannot "decide which interpretation of the facts [was] correct ... [and choose] a favored interpretation."); Boyle v. County of Allegheny, Pennsylvania, 139 F.3d 386, 392-93 (3d Cir. 1998). In making its determination as to the existence of a factual dispute, the court must view all evidence in the light most favorable to the party opposing the motion for summary judgment. Moreover, summary judgment may not be granted "if there is a disagreement over

---

[2]  The mere fact that the parties filed cross-motions under Rule 56 does not mean that the case must necessarily be resolved at the summary judgment stage. See Williams v. Philadelphia Housing Authority, 834 F.Supp. 794, 797 (E.D.Pa.1993) aff'd, 27 F.3d 560 (3d Cir. 1994) ("In cases where the parties filed cross-motions for summary judgment, each side essentially contends that no issue of material fact exists from its perspective. . . . We must, therefore, consider each motion for summary judgment separately. . . . The standards under which we grant or deny summary judgment do no change because cross motions are filed. . . . Each party still bears the initial burden of establishing a lack of genuine issues of material fact. Such contradictory claims do not necessarily guarantee that if one party's motion is rejected, the other party's motion must be granted." (citations omitted)). Although a party may assert that, according to his theory of the case, the material facts are undisputed, he must be allowed to show that if his opponent's theory is adopted there remains a genuine issue of material fact. See Walling v. Richmond Screw Anchor Co., 154 F.2d 780, 784 (2d Cir. 1946).

what inferences may reasonably be drawn from the facts, even if the facts are undisputed." Nathanson v. Medical College of Pa., 926 F.2d 1368, 1380 (3d Cir. 1991). Thus, this Court must give Plaintiffs "the benefit of every favorable inference that can be drawn from the record." Robertson v. Central Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995); American Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995) ("all reasonable inferences and any ambiguities should be drawn in favor of the party against whom [summary] judgment is sought").

Here, a fact-finder could conclude from evidence in the record, that was not addressed by this Court, that the parties intended to release the policies issued by International and North River in addition to the policy issued by United States Fire Insurance Company.

Evidence of the post-agreement conduct of the parties in the performance of the agreement may serve to reveal their original understanding. *See* Michaels v. Brookchester, Inc., 140 A.2d 199, 204 (N.J. 1958); Journeymen Barbers, etc., Local 687 v. Pollino, 126 A.2d 194 (N.J. 1956); *see also* Restatement (Second) of Contracts § 223(2) (1981). In this instance, the parties' conduct after the 1991 settlement would support a fact-finder's conclusion that the parties intended that the Agreement release policies in addition to the policy issued by United States Fire Insurance Company.

After the 1991 settlement, Defendant Combustion Engineering ("CE") sent claim notices to International, and International repeatedly responded that its obligations had been resolved by the Agreement. (*See* Record, Exhibit 8 (six letters to CE dated in 1995-99 (Exhs. KK, LL), all citing the Agreement as a basis for rejecting post-1991 claims).) Only once during this entire period, in 1995, did CE question International's position. (*See* Record, Exhibit 8 (Letter from CE dated Sept. 5, 1995 (in Exh. KK)).) Even then, CE simply asked for "a

further explanation" (*id.*); it did not assert that International was wrong about the broad scope of the 1991 settlement.  International promptly provided the further explanation that CE had requested, explaining the broad language of the Agreement.  (*See* Record, Exhibit 8 (Nov. 30, 1995 response letter to CE (in Exh. KK)).)  After receiving this explanation, CE never responded by challenging International's reading of the Agreement.  (*See* Record, Exhibit 8 (Dickhoff Depo. (Exh. QQ) at 22:19-23:2; 24:15-24; Prickett Depo. (Exh. RR) at 110:4-112:3).)  Instead, CE simply continued sending occasional notices to International, and International continued to respond that it had no further obligations as a result of the Agreement.  (*See* Record, Exhibit 8 (Exh. LL).)  This demonstrates that, consistent with the broad language of the Agreement, International expressed its understanding to CE that the Agreement settled all its policies, and CE did not dispute International's assertion.

   Moreover, the fact that CE continued sending International notices does not demonstrate that CE understood that the Agreement had settled claims only against United States Fire Insurance Company.  CE's agents regularly sent claims notices to dozens of insurance companies under hundreds of policies.  Many of these notices were essentially boilerplate, with only the claimants' names changed.  Indeed, CE continued sending claim notices to United States Fires Insurance Company for many years after the 1991 settlement – even though all parties agree that the 1991 settlement fully released dated in 1991 from CVCSC (CE's claims-handling subsidiary) notifying United States Fire Insurance Company of various claims (Exh. OO); letters dates in 1995 and 1999 from Marsh & McClennan (CE's insurance broker) notifying United States Fire Insurance Company of various claims (Exh. PP)).)

   Although the Court noted that Plaintiff North River did not raise the Agreement as a defense to Defendant Basic, Incorporated's claims until this adversary proceeding, there is

evidence that explains why this was so.  The outside counsel responding to Basic's coverage claims (Mendes & Mount) was not involved in or apparently aware of the 1991 settlement, and Basic's claim notices to North River never identified Basic as an affiliate of CE.  (*See* Record, Exhibit 8 (letters from Basic dated in 1995-99 (Exh. LL); Prickett Depo. (Exh. RR) at 109:5-110:3).)  Thus, even if Mendes & Mount had known of the settlement, it would not have known that it barred the claims being presented by Basic.  Because the people handling the claims that Basic submitted to North River did not know of the Agreement and also had no reason to know that Basic was related to CE, North River's failure to reject those claims on that ground does not mean that the parties did not intend to release North River.

Furthermore, the Court's conclusion that "there is no indication that the parties contemplated executing a release and settlement encompassing all policies issued to CE and Basic by any company within the Crum & Forster family" (Opinion at 24) ignores important evidence in the record.  For example, there is evidence that CE was aware, at the time it entered into the Agreement, that United States Fire Insurance Company, International, and North River were all affiliated as members of the Crum & Forster group of insurance companies.  (*See* Record, Exhibit 8 (Dickhoff Depo. (Exh. QQ) at 23:6-11).)  Similarly, Mr. Roger Prickett, the head of Crum & Forster's Environmental Claims Unit ("ECU") and the person who approved and executed the Settlement Agreement, testified that his usual practice, both before and after 1991, was to inform all parties – including the policyholder with whom he was negotiating the settlement – that it was the ECU's policy that lump sum settlements, such as the one embodied in the Agreement, should be complete "walk-aways" encompassing all Crum & Forster companies and policies.  He is confident that he followed that practice in this case.  (*See* Record, Exhibit 8 (Prickett Depo. (Exh. RR) at 94:24-95:18, 100:17-102:9, 112:4-22, 114:2-15, 122:1-7).)

Finally, Mr. Prickett testified that when he read the final version of the Agreement, he was satisfied that it settled and released all Crum & Forster companies and policies. He would not have approved and signed it if it did not. (*Id.* at 103:18-104:6.) At a minimum, a fact-finder should hear and weigh this evidence; it cannot be dismissed on summary judgment.

Given the Court's failure to account for important evidence that reveals that the Agreement's provisions settled more than the United States Fire Insurance Company policy, the Court should have allowed a fact-finder to decide which interpretation of the facts was correct. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion") (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Coolspring Stone Supply, Inc. v. American States Life Ins, Co., 10 F.3d 144, 146 (3d Cir. 1993). Upon finding that the text of the Settlement Agreement was susceptible to two different interpretations, this Court should have denied both motions for summary judgment and concluded that a trial is necessary to resolve the conflicting evidence of the parties' intent. *See* Emerson, 253 F.3d at 163 (applying New Jersey law, district court improperly "usurped the jury's function" by finding contract term ambiguous "but granting summary judgment without permitting the jury to resolve the ambiguity."); Einhorn v. Fleming Foods of Pennsylvania, Inc., 258 F.3d 192, 195 (3d Cir. 2001) (even though interpretation offered by one party was "less concrete" than the moving party's interpretation, summary judgment was improper and issue was remanded for trial by fact-finder).

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court reconsider its April 21, 2005 Opinion and Order, vacate its Order granting summary judgment in favor of Defendants, and enter a new order reversing the order of the Bankruptcy Court on the ground that disputed issues of material fact preclude summary judgment.

Dated: May 2, 2005

/s/ Brian L/ Kasprzak
Brian L. Kasprzak (No. 3846)
MARKS, O'NEILL, O'BRIEN AND COURTNEY, P.C.
913 North Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 658-6538
Facsimile: (302) 658-6537
Email: bkasprzak@mooclaw.com

Carter G. Phillips
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street
Washington, D.C. 20005
Telephone (202) 736-8000
Facsimile (202) 736-8711
Email: cphillips@sidley.com

Mark D. Plevin
Jonathan H. Pittman
Jennifer R. Devery
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone (202) 624-2500
Facsimile (202) 628-5226
Email: mplevin@crowell.com
Email: jpittman@crowell.com
Email: jdevery@crowell.com

Counsel for plaintiffs TIG Insurance Company (solely as successor by merger to International Insurance Company) and The North River Insurance Company

2230657